IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| VELVET I.,[1] | No. 6:22-cv-1338-JR |
| Plaintiff, | OPINION & ORDER |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

RUSSO, Magistrate Judge:

Plaintiff Velvet I. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits under the Social Security Act ("the Act"). All parties have consented to allow a Magistrate Judge to enter final orders and judgement in this case in

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). ECF No. 13. For the reasons set forth below, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

## PROCEDURAL BACKGROUND

Born in October 1973, plaintiff alleges disability beginning September 1, 2017, due to diabetes, left shoulder pain, hand and finger numbness, essential tremors, neck and back issues, asthma, nerve pain in her feet, anxiety, PTSD, bee allergy, her "legs give out randomly," and fibromyalgia. Tr. 262, 266. Her application was denied initially and upon reconsideration. Tr. 158-62, 167-71. On March 25, 2021, plaintiff appeared at an administrative hearing before Administrative Law Judge ("ALJ") Steven De Monbreum. Tr. 51-93. On July 30, 2021, the ALJ issued a decision finding plaintiff not disabled. Tr. 27-50. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff did not engage in substantial gainful activity from her alleged onset date of September 1, 2017 through her date last insured of June 30, 2020. Tr. 33. At step two, the ALJ determined the following impairments were medically determinable and severe: "spine disorders status post surgery, hx of radiculopathy, dysfunction of joints, diabetes, fibromyalgia, asthma/chronic obstructive pulmonary disease (COPD), history of essential tremor; posttraumatic stress disorder (PTSD), and depression." Tr. 34. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 34.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that

plaintiff had the residual function capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she:

> can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, and crouch. She cannot crawl. She can occasionally reach overhead bilaterally, and frequently handle and finger bilaterally. She should have no exposure to vibrations or hazards. She should have no more than occasional exposure to pulmonary irritants, such as dusts, fumes, odors, gases, and poor ventilation consistent with an indoor office-like environment. She can perform simple, routine tasks consistent with a DOT GED Reasoning Level of 2, or less. She can have occasional interaction with coworkers and the public.

Tr. 36.

At step four, the ALJ determined plaintiff was unable to perform any past relevant work. Tr. 44. At step five, the ALJ found plaintiff had the ability to perform jobs that exist in significant numbers in the national economy, specifically as a router, small products assembler, and hotel housekeeper. Tr. 44-45.

## DISCUSSION

Plaintiff argues the ALJ erred by (1) discrediting her subjective symptom statements without clear and convincing reasons for doing so; (2) failing to provide germane reasons to reject competent lay witness statements; and (3) erroneously finding the medical opinion of Aimee Hansen, FNP, unpersuasive.

**I.  Symptom Testimony**

Plaintiff contends the ALJ erred by discrediting her testimony that her shoulder and spine issues, neuropathy, diabetes and fibromyalgia pain limit her ability to work. Pl.'s Br., ECF No. 8 at 10-12. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the

severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499

At the hearing, plaintiff testified to right shoulder pain that had progressively worsened over time, and which sometimes impacted her grip strength. Tr. 58, 60-61. She had surgery on her left shoulder in 2018 but remained limited in the amount of weight she could lift. Tr. 59. She experienced pain when lifting her left arm above her head and reaching behind her body. Tr. 60. She had problems reaching in front of her body and "doing everything" with her right, dominant arm. Tr. 63-64. She also experienced neuropathy in her feet and foot pain with standing and

walking. Tr. 64. She again reported that her husband handled most of the household chores. Tr. 64. Her diabetes was not well controlled; her A1c was down from 12.0 to 10.0, and her blood sugars had been in the 300s despite insulin and oral medication. Tr. 66. There were days when she would "fall asleep all the time" because of her blood sugars. Tr. 66. She had trouble remembering things and processing information. Tr. 67, 71-72. She spent most of her days in a reclined position, with her legs slightly elevated. Tr. 72- 73. She experienced tremors in her hands. Tr. 92.

In a written submission, plaintiff reported an inability to sit or stand for long periods due to pain. Tr. 291. She described a stutter and tremors. Tr. 291. Her husband typically cared for their pets. Tr. 292. He also did the household chores. Tr. 294. Plaintiff relied on alarms or other reminders to take her medications. Tr. 293. She stayed home most days. Tr. 296. She typically spent her time watching television alone due to pain. Tr. 295, 296. Her impairments impacted her ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, see, remember things, complete tasks, concentrate, understand, and use her hands. Tr. 296. She could pay attention for about twenty minutes. Tr. 296. She could not "retain information" to follow spoken instructions. Tr. 296.

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not discuss any evidence of malingering. Tr. 37. However, the ALJ concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 37. Specifically, the ALJ found plaintiff's symptom allegations were inconsistent with objective medical evidence, and that plaintiff's improvement with

5 – OPINION & ORDER

treatment and a conservative course of treatment conflicted with her symptom allegations. Tr. 37-38.

   A. *Objective Medical Evidence*

The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Indeed, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original); s*ee also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). A claimant's failure to report symptoms to providers is another valid basis to find a claimant's symptom allegations unreliable. *Greger v. Barnhart*, 464 F.3d 968, 972-73 (9th Cir. 2006). The lack of objective medical evidence is insufficient, by itself, to justify discounting a claimant's testimony. *See, e.g., Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chafer*, 157 F.3d 715, 722 (9th Cir. 1998) ("the Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence."). When coupled with other permissible reasons, however, lack of objective medical evidence to support a claimant's allegations may be used to discount a claimant's testimony. *Batson*, 359 F.3d at 1197–98.

The ALJ reasonably discounted plaintiff's allegations about spinal issues, neuropathy, shoulder pain, and diabetes as inconsistent with the record. Conflict with objective medical

evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). At the hearing, plaintiff testified that her back and shoulder pain limited how much she could lift, her range of motion, and grip strength. Tr. 60-63. She further testified that her neuropathy left her with no feeling in her left foot, and that her "right foot is always on fire, pins and needles," making it difficult to stand and walk. Tr. 64. The ALJ compared these allegations to medical imaging and nerve conduction testing performed during the relevant period, noting that any abnormalities were generally classified as "mild" or "minimal." Tr. 37 (citing Tr. 503-04, 662, 667, 848, 937). The ALJ likewise highlighted physical examinations where plaintiff presented with normal gait, "5/5 strength in all examined major muscle groups," and symmetric reflexes except for her left and right hamstrings. Tr. 38 (citing, e.g., Tr. 505-06, 508-09, 845-47). The ALJ reasonably referenced these relatively mild indicators in the objective medical evidence when discounting plaintiff's testimony about her physical limitations. Tr. 37-38. Concerning diabetes, plaintiff testified at the hearing that some days she would "fall asleep all the time" because her blood sugar was not well controlled. Tr. 66. The ALJ acknowledged that plaintiff's blood sugar levels were "variable," but overall found that the evidence "do[es] not objectively show . . . symptoms or limitations [from diabetes] that would be disabling." Tr. 40. The ALJ relied upon diabetic foot examination findings, and medical records showing plaintiff's diabetes was "stable on current medications" to support this inference. Tr. 40-41 (citing Tr. 590-91, 1024). The ALJ supported his decision to discount these aspects of plaintiff's symptom testimony with substantial evidence, and this was a clear and convincing reason for the ALJ to rely upon.

    The objective medical evidence the ALJ cited is not a clear and convincing reason to discount plaintiff's testimony about fibromyalgia, however, because the evidence the ALJ relied

7 – OPINION & ORDER

upon does not conflict with how fibromyalgia typically presents. As plaintiff rightly points out, fibromyalgia is distinctive because an individual can have "muscle strength, sensory functions, and reflexes [that] are normal," but still experience significant pain. *Revels v. Berryhill*, 874 F.3d 648, 656, 663, 666 (9th Cir. 2017). Unlike plaintiff's neuropathy, and spinal and shoulder issues, a "diagnosis of fibromyalgia does not rely on X-rays or MRIs," and is difficult to pin down with objective medical evidence. *Id.* at 657; *See, e.g., Nunn v. Berryhill*, 2018 WL 2244705, at *10 (D. Or. May 16, 2018) (rejecting a lack of objective medical evidence as a valid factor in considering a fibromyalgia claimant's testimony); *Bair v. Comm'r of Soc. Sec. Admin.*, 2018 WL 2120274, at *5 (D. Or. May 8, 2018) (holding the same). The objective medical evidence the ALJ cited here conflicts with some of plaintiff's diagnoses, but does not meaningfully conflict with plaintiff's fibromyalgia, or the likelihood that her fibromyalgia causes the symptoms she alleged at the hearing. The records the ALJ cited do not actually conflict with plaintiff's testimony, and the ALJ failed to support the decision to discount plaintiff's testimony with substantial evidence.[2]

    B.  *Conservative treatment & improvement with treatment*

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of ... symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Ninth Circuit holds that "evidence of medical

---

[2] This error was harmless, however, because the ALJ relied on another clear and convincing reason, supported by substantial evidence, to discount plaintiff's testimony concerning fibromyalgia. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including an erroneous reason among other reasons is at most harmless error where an ALJ provides other reasons that are supported by substantial evidence).

treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). Additionally, an ALJ may consider a claimant's unexplained or inadequately explained failure to follow a prescribed course of treatment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

Conservative treatment can also be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not as all-disabling as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

The ALJ reasonably concluded that plaintiff's conservative course of medication and positive response to treatment further undermined her hearing testimony. Although plaintiff complained that pain associated with her fibromyalgia, shoulder and spine issues, and neuropathy impacted her ability to work, tr. 60-72, the ALJ noted that plaintiff addressed these symptoms with an effective course of medications. Tr. 39, 42. The ALJ specifically noted that plaintiff told providers her pain symptoms were "stable," and that she "doesn't check her blood sugars often, but she feels that they've been fine." Tr. 38. The ALJ also noted plaintiff's reflection that she "feels that her pain medications are helping her to feel functional," and that her course of medication was generally successful at treating her pain. Tr. 40 (citing Tr. 549, 531, 621, 1040 ). The ALJ further relied on the fact that plaintiff's doctors found she was not a

surgical candidate and that she should instead pursue "conservative measures and pain management." Tr. 39, 848. The ALJ's decision also reasonably relies on plaintiff's failure to pursue more significant treatment options. Specifically, the ALJ notes plaintiff was twice referred to physical therapists, but never followed through on these recommendations. *See* Tr. 39, 506. This is another clear and convincing reason, supported by substantial evidence to discount plaintiff's symptom testimony.

## II.     Lay Witness Testimony

In determining whether a claimant is disabled, an ALJ must consider "lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence that cannot be rejected without comment, and requires germane reasons, explained individually or in the aggregate. *Id*. An ALJ's failure to provide germane reasons for rejecting lay witness evidence is harmless where an ALJ properly rejects a claimant's testimony and the lay witness evidence describes the same limitations. *Molina*, 674 F.3d at 1122.

Plaintiff's husband reported that pain affected her ability to sleep, and that she needed reminders to take her insulin and to check her blood pressure. Tr. 302, 303. She did not prepare her own meals. Tr. 303. She was able to do laundry, but she needed reminders to do it. Tr. 303. She did not go outside often. Tr. 303. She was able to drive and go out alone, but she usually had someone accompany her. Tr. 304. She watched television "all the time." Tr. 305. She did not spend time with other people and no longer had a social life. Tr. 305. She had problems getting along with other people because of anxiety. Tr. 305. Her conditions affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, see, remember, complete tasks,

concentrate, understand, follow instructions, and use her hands. Tr. 306. She was able to walk two blocks before needing to stop and rest for ten minutes. Tr. 306. She was "horribly bad" at following written instructions. Tr. 306. She could not handle stress or changes in routine. Tr. 307. She experienced tremors and stuttering and was afraid of what people might think of her. Tr. 307.

The ALJ provided specific, germane reasons to discount the lay witness testimony, which mirrored plaintiff's own. Where lay witness testimony does not describe limitations beyond those described by the claimant, "the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina*, 674 F.3d at 1122. Here, the ALJ repeated the clear and convincing reasons for discounting plaintiff's self-reports, discussed above, when considering the similar statements from plaintiff's husband. Tr. 38-40. These were sufficiently specific, germane reasons for discounting this testimony, and the ALJ's decision to do so was supported by substantial evidence in the record.

### III.   Medical Opinion Evidence

For disability claims filed on or after March 27, 2017, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a). The 2017 regulations eliminated the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the 2017 regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. §

11 – OPINION & ORDER

404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2-3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

*Aimee Hansen, FNP*

In February 2021, FNP Hansen reported in a written statement that she had been treating plaintiff for more than ten years, and they currently met once every month or two. Tr. 1062. FNP Hansen reported that plaintiff's diagnoses included type 2 diabetes mellitus, tremors, dorsalgia, fibromyalgia, radiculopathy, and spinal stenosis. Tr. 1062. All of her conditions were chronic and lifelong. Tr. 1062. Her symptoms included increased pain, tremors, decreased balance,

chronic fatigue, memory difficulties, and radiating pain. Tr. 1063. Relevant clinical findings included MRI results and visible tremor that worsened with pain and stress. Tr. 1063. Treatment had included pain medication, diabetic medication, and follow up with orthopedics. Tr. 1064. FNP Hansen noted that plaintiff's pain medication could cause fatigue and grogginess and could affect her ability to function completely. Tr. 1064.

FNP Hansen opined that plaintiff needed to lie down and rest frequently throughout the day for about thirty minutes at a time. Tr. 1063. She was able to sit for thirty minutes at a time and two hours total in an eight-hour workday. Tr. 1064. She could stand/walk for fifteen minutes at a time and two hours total in an eight-hour workday. Tr. 1064. She required opportunities to shift positions at will from sitting, standing, and walking. Tr. 1064. She would need to take four unscheduled, fifteen-minute breaks in an eight-hour workday. Tr. 1065. She could lift/carry ten pounds occasionally, and never more. Tr. 1065. She would need to periodically elevate her legs during a physical eight-hour period. Tr. 1065. She would miss more than four workdays per month. Tr. 1066. FNP Hansen noted that the limitations she assessed had been present since she first began treating plaintiff. Tr. 1066.

The ALJ found FNP Hansen's opinion unpersuasive. Tr. 43. The ALJ found the "extreme limitations [FNP Hansen] proffered are out of portion [*sic*] to her own treatment notes and her objective clinical observations and course of treatment documented therein (see, for example, [Tr. 953])." Tr. 43. Plaintiff argues the ALJ did not adequately assess the strength of the evidence underlying FNP Hansen's opinions, or take into account "fibromyalgia's unique characteristics, including that it is diagnosed based on a patient's self-reported symptoms and that outwardly normal physical examinations are to be expected." Pl. Br. at 15-16 (citing *Swales v. Saul*, 852 F. App'x 253, 255 (9th Cir. 2021)).

13 – OPINION & ORDER

Regarding supportability, the ALJ adequately discussed the strength of the evidence underlying FNP Hansen's opinion when finding it unpersuasive. The supportability factor requires ALJs to consider the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion." 20 C.F.R. § 404.1520c(c)(1). The ALJ reasonably found the opinion lacked supportability because FNP Hansen's own treatment notes and plaintiff's course of treatment did not match up to the extreme limitations she proffered in the treating source statement issued in support of plaintiff's disability application. Tr. 43. Instead, FNP Hansen's treatment notes from 2017-19 contained largely "benign objective observations," and reflect a conservative course of treatment, which kept pain symptoms "stable" Tr. 38. The ALJ further observed that FNP Hansen's clinical notes contain "very little objective clinical evidence." Tr. 39. Thus, the ALJ reasonably concluded that the opinion lacked support, i.e., an adequate explanation of how specific functional limitations are linked to objective medical evidence and supporting explanations from medical sources in the record. *See* 20 C.F.R. § 404.1520c(c)(1); see also 20 C.F.R. § 404.1513(a)(2)(ii). The ALJ adequately considered the supportability of FNP Hansen's opinion by examining the bases for her conclusions and discounting those bases for lack of support and lack of explanation.[3]

The ALJ also adequately addressed the consistency of FNP Hansen's opinion when finding it unpersuasive. The consistency factor requires the ALJ to assess medical opinions'

---

[3] Plaintiff renews her argument that the ALJ failed to consider the peculiar characteristics of fibromyalgia when analyzing the supportability of FNP Hansen's opinion. Pl. Br. at 9. As indicated above, however, the ALJ relied on substantial evidence in the record, including plaintiff's numerous reports that medications improved her pain, to conclude that plaintiff's fibromyalgia was not as limiting as FNP Hansen opined. Tr. 39, 42 (citing Tr. 549, 531, 621, 1040).

14 – OPINION & ORDER

alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). The ALJ reasonably contrasted FNP Hansen's opinion with two opinions provided by doctors Ramona Bates, M.D., and L. Cylus, M.D., which contradicted FNP Hansen's extreme limitations. Tr. 42-43. The ALJ reasoned that Doctors Bates and Cylus's opinions were better aligned with the longitudinal record and other medical evidence in the record. Tr. 43 132-33, 152-56. Again, the ALJ emphasized that the medical record reveals a patient who treated her pain and neuropathy symptoms conservatively and successfully, with largely unremarkable findings as documented by Dr. Boggs, Dr. Kokkino, and Dr. Herring, and that plaintiff failed to follow through on recommendations for physical therapy. Tr. 37-39 (citing Tr. 503-04, 505-06, 508-09, 532, 662, 667, 845-47, 848, 918-27, 937, 949-57, 1042). Plaintiff urges a different interpretation of the medical evidence, which she argues better supports FNP Hansen's February 2021 opinion. Pl. Br. at 16-17. But these arguments are an effort to have this Court re-weigh the evidence, which is beyond the scope of review. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ."). Even when there are two reasonable interpretations—plaintiff's and the ALJ's—the ALJ's interpretation must prevail. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). The Court finds the ALJ sufficiently addressed the consistency and supportability factors and supported his decision to discount FNP Hansen's opinion with substantial evidence.

15 – OPINION & ORDER

## CONCLUSION

For the reasons above, I AFFIRM the Commissioner's decision and DISMISS this case.

IT IS SO ORDERED.

Dated this 3rd day of June, 2024.

                                                  /s/ Jolie A. Russo
                                                  Jolie A. Russo
                                                  United States Magistrate Judge